IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN W. PEROTTI, | ) | CASE NO. 1:16 CV 2347 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| MS. O'BOYLE *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff John W. Perotti filed the above-captioned action against Ohio Adult Parole Authority ("OAPA") Parole Officer Ms. O'Boyle, OAPA Supervisor Mr. Irby, Parole Board Chairperson Andre Imbrogno, Chief Hearing Officer David Lomas, Parole Board Member Marc Houck, Ohio Public Defender Steven Herron, Lorain Correctional Institution ("LORCI") Warden Kimberly Clipper, LORCI Warden's Assistant Mrs. Miller, LORCI Physician John Friesan, LORCI Health Care Administrator Dave Less, LORCI Librarian Mr. Hlebovy, LORCI Case Manager Ms. Redwood, Ohio Department of Rehabilitation and Correction ("ODRC") Director Gary Mohr, the ODRC Chief Inspector, and the ODRC Heath Planning Administrator Rocco Combine. Plaintiff filed an Amended Complaint on October 11, 2016 (ECF No. 4). He filed a Motion for Leave to Amend Complaint on December 30, 2016 (ECF No. 9). That Motion is granted.

In his second Amended Complaint, Plaintiff asserts multiple unrelated causes of action. He claims the Defendants were deliberately indifferent to many medical and psychological needs. He asserts he was denied access to the courts when he was not given unlimited access to the law library

to prepare for his parole revocation hearing. Finally, Plaintiff challenges the OAPA's decision to revoke his parole, claiming it was retaliatory and based on false information in his prison file. He argues that Ohio Revised Code § 2929.41(B)(3) and Ohio Administrative Code § 5120-2-03 are void for vagueness because they allowed his sentences to run consecutive to the sentences he received for prior convictions. He contends the OAPA's detainer denied him due process and required him to serve thirteen years in federal custody for which he was not given credit toward his state sentence. He seeks immediate release from prison on parole, unlimited access to the prison law library, a computer, and a photocopying machine, referral to a Cleveland Clinic physician, and monetary damages.

### Factual and Procedural Background

Plaintiff has been incarcerated in state and federal correctional institutions since 1974. He was convicted in 1974, 1975, 1976, 1982, 1985 and 1989 in multiple Ohio Common Pleas Courts and was sentenced to an aggregate total of twenty-two to sixty years in prison. He was paroled in 2003, but was arrested in 2004 on federal charges of being a felon in possession of ammunition. He was convicted in 2005 in this District Court and sentenced under the Armed Career Criminal Act to 210 months in prison. Then United States District Judge Kathleen M. O'Malley permitted his federal sentence to run concurrent with his state parole revocation sentence. The OAPA, however, did not hold an immediate parole revocation hearing, choosing instead to issue a detainer. In April 2016, Plaintiff's federal sentence was modified to "time served." On April 13, 2016, the OAPA took custody of Plaintiff in accordance with the detainer and held him at LORCI until his revocation hearing on May 11, 2016. At that hearing, the parole board revoked his parole, and continued his parole eligibility hearing for five years. He then was transferred to the Mansfield Correctional

Institution ("MANCI") to serve the remainder of his state sentence.

Plaintiff first challenges the medical care he received while temporarily housed at LORCI. He indicates he is sixty years old and weighs three hundred thirty five pounds. He indicates he suffers from heart disease, high blood pressure, Hepatitis C, chronic pain, seizures, sleep apnea, knee pain as a result of "botched" surgery, back pain and post traumatic stress disorder. For these ailments, the Federal Bureau of Prison physicians prescribed Percocet, Talwin, Tramadol, Klonopin, Oxycontin, Tegretol, Ibuprofen Prozac, and Neurontin. He contends that when he arrived at LORCI, Dr. Friesan discontinued his Neurontin, Ibuprofen, and Tramadol and replaced them with Tylenol, and topical muscle analgesics. He contends Friesan also discontinued his prescription for Prozac. He claims he repeatedly went to sick call asking for his medications to be restored and for a referral to an orthopedic specialist for bilateral knee replacements. He indicates Friesan and Less denied his requests. Plaintiff also claims he requested a prescription for Harvoni to treat his Hepatitis C, and was told he did not qualify for the treatment. Plaintiff contends LORCI is a receiving facility and the ODRC has a policy to delay treating inmates with Hepatitis C until they reach their parent institution.

Second, Plaintiff asserts he was denied access to the courts. He alleges he was not given unlimited access to the law library, use of the telephone in the office, or use of a typewriter to prepare for his parole revocation hearing. He claims this resulted in a five year continuance until his next parole hearing.

Finally, Plaintiff challenges the result of his parole revocation hearing. He raises four claims to support this challenge. First, he claims the parole board revoked his parole and denied him release in retaliation for filing grievances and assisting other inmates with filing lawsuits. Second, he claims

his parole file contained inaccurate information listing his conviction as one of being a felon in possession of a firearm rather than a felon in possession of ammunition. He contends there is also an inaccurate statement concerning a positive drug test in 2003. Third, he asserts Ohio Revised Code § 2929.41(B)(3) and Ohio Administrative Code § 5120-2-03 are void for vagueness because they permitted his sentences to run consecutive to each other rather than concurrent. Fourth, he claims that although Judge O'Malley ordered his federal sentence to be served concurrent with his state parole revocation sentence, the State of Ohio issued a detainer and did not hold the revocation hearing until his release from federal custody. He asserts this delay denied him due process and caused him to lose credit toward his state sentence for time served in federal prison.

## Standard of Review

Although pro se pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be

sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the Defendant unlawfully harmed me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998)

## Discussion

### Eighth Amendment

Plaintiff first asserts the Defendants were deliberately indifferent to his serious medical needs. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment protects inmates by requiring that "prison officials ... ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Prisoners are not entitled to unfettered access to the medical treatment of their choice, s*ee Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor can they "expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *see Thaddeus-X v. Blatter*, 175 F.3d 378, 405 (6th Cir. 1999). In

sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health threats, but does address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A Plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson*, 503 U.S. at 8. Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. A Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

In the context of medical treatment, an inmate must show two elements to demonstrate a violation of his Eighth Amendment rights: 1) that he was suffering from a "serious" medical need; and 2) that the prison officials were "deliberately indifferent" to the serious medical need. *Id.* It is clear from the foregoing that the duty to provide a certain level of health care to incarcerated offenders under the Eighth Amendment is a limited one. "Not 'every ache and pain or medically

recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, No. 03-2633, 2004 WL 2203585 (6th Cir. Sept. 15, 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)). Furthermore, the inmate must show that prison officials had "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). This standard is met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer*, 511 U.S. at 837).

Plaintiff first contends Friesan and Less removed him from his medications all together or substituted medications which Plaintiff believes were not as effective. When a prisoner is under the care of a physician, and receives some care, he can state a claim for deliberate indifference only by showing his treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002). Claims that amount to nothing more than a difference of opinion regarding the medical diagnosis and treatment, may state a claim for negligence or medical malpractice, but do not rise to the level of an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Federal courts will not second-guess the medical judgments of prison officials and constitutionalize claims which sound in state tort law. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5. (6th Cir. 1976). In this case, Plaintiff disagreed with the LORCI physician on the preferred medication to treat his pain. That difference of opinion does not support an Eighth Amendment claim.

With respect to his claim for treatment of his Hepatitis C condition, he asked the LORCI

physician for a regime of the medication Harvoni. In his grievance, he was told he did not meet the criteria for treatment with that medication. (ECF No. 4-1 at PageID #:123, ECF No. 4-1 at PageID #: 125). Plaintiff contends he was also told LORCI was a receiving center for Ohio prisoners. Plaintiff would not be eligible for chronic care treatments until he reached the institution to which he was assigned. Notably, Plaintiff had just arrived at LORCI from a federal prison where he had spent the last thirteen years. He does not allege he had been receiving this treatment while in federal custody. This also amounts to a difference of opinion over the preferred course of treatment and does not state a claim for relief under the Eighth Amendment.

**Access to the Courts**

Plaintiff next asserts the Defendants denied him access to the courts in connection with his parole revocation hearing. To state a claim for denial of access to the courts, Plaintiff must allege particular actions of the Defendants prevented him from pursuing or caused the rejection of a specific non-frivolous direct appeal, habeas corpus petition, or civil rights action. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). A parole revocation hearing is not a direct appeal of a conviction, a habeas corpus petition nor a civil rights action. It therefore is not encompassed within the First Amendment's right of access to the courts. *Maule v. Crawford*, No. 1:06 CV 236, 2009 WL 559876, at *13 (W.D. Mich. Mar. 4, 2009).

**Parole Revocation**

Plaintiff asserts five claims to challenge the result of his parole revocation. He seeks both immediate release from prison on parole, and monetary damages.

To the extent Plaintiff seeks immediate release on parole, he cannot proceed with his claim in a civil rights action. When a prisoner challenges "the very fact or duration of his physical

-8-

imprisonment, ... his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Claims seeking release from prison are not cognizable under 42 U.S.C. § 1983.

To the extent Plaintiff is seeking damages as a result of his continued incarceration, his claims still cannot proceed. Claims, which if found to have merit would call into question the validity of Plaintiff's parole revocation and continued incarceration, are not cognizable under § 1983 until the parole revocation "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir.1995). The principles espoused in *Heck* have been applied to § 1983 actions like Plaintiff's, challenging state parole revocation proceedings in the absence of a previous decision by a state or a federal court declaring the parole revocation invalid. *See Lovett v. Kinkela*, No. 98-3894, 1999 WL 644323, at *1 (6th Cir. Aug. 16, 1999); *Corsetti v. McGinnis*, No. 95 2061, 1996 WL 543684, at *1 (6th Cir. Sept. 24, 1996); *Delong v. Hudechek*, No. 1:16 CV 176, 2016 WL 878055, at *2 (W.D. Mich. Mar. 8, 2016). The claims Plaintiff presented, if successful, would necessarily invalidate the parole revocation. He has not demonstrated the invalidity of his parole revocation by either a state court or federal habeas corpus decision. Therefore, Plaintiff's claims challenging his parole revocation are barred by *Heck* unless and until his parole revocation is invalidated.

## Conclusion

Accordingly, Plaintiff's Motion to Amend Complaint (ECF No. 9) is granted. This action is dismissed pursuant to 28 U.S.C. §1915(e). Plaintiff's Motion for Court Order that Exhibits be Shared By Defendants (ECF No. 3), Motion for Order to US Marshal to Serve Defendants (ECF No.

7), Motion for Partial Summary Judgment (ECF No. 10) and Application to Clerk for Entry of Default Against All Defendants (ECF No. 11) are denied. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

*/s/ Donald C. Nugent*
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: January 26, 2017

---

[1] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.